# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| TERRI PARRISH, : | |
| Plaintiff, : | |
| vs. : | Case No. 3:14cv00200 |
| CAROLYN W. COLVIN, : | District Judge Walter Herbert Rice |
| Acting Commissioner of the Social | Chief Magistrate Judge Sharon L. Ovington |
| Security Administration, : | |
| Defendant. : | |

## REPORT AND RECOMMENDATIONS[1]

**I.    Introduction**

Plaintiff Terri Parrish brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. She asserts here, as she did before the Social Security Administration, that she has been under a benefits-qualifying disability – starting on July 23, 2009 – due to depression, "anger violence," arthritis, chest pain, and diabetes. (Doc. #6, *PageID#* 326). Social Security Administrative Law Judge Amelia G. Lombardo denied Plaintiff's applications by concluding that she was not under a "disability" within the meaning of the Social Security Act.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc. #6), and the record as a whole.

## II.     Background

Plaintiff was under age 50 on the date she filed her applications and on the date of Administrative Law Judge Lombardo's decision. Consequently, Plaintiff was considered a "younger" person under Social Security regulations. She has a high-school education. In the past, she worked as an organist and a production machine assembler.

During an administrative hearing, held in 2012 by Administrative Law Judge Lombardo, Plaintiff testified that she is "depressed all the time." (Doc. #6, *PageID#* 102). She cries a lot and is very impatient and very frustrated. She explained:

> I have a lot of negative things that I think about. I'm – I've gotten violent here recently – well a lot. I just don't have the patience to tolerate anything or anyone. That's why I, basically stay at home most of the time and don't do a whole lot because my mental – I've been depressed ever since I was a child. And it seems like there's nothing that really just ever bring[s] me fully out of that depression, even the medication that I take.
>
> I don't know if it's my surrounding life or what. I can't really explain it because it's been going on all my life – depression. It's never ceased. And now that I'm older, it's getting worse.

*Id*. at 102-03. She has a piano in her home and occasionally plays the organ at a church wedding or funeral. In the morning, she wakes up early and watches the Lifetime channel on television. She testified, "if there's a movie on, I watch that all day. I really don't have a

life. I watch TV all – I mean, I just watch TV. It's nothing to do. I mean, there's just – I don't have the desire to do anything." (Doc. #6, *PageID*# 112). At the time of the ALJ's hearing, she received therapy from a counselor once or twice per month. Her therapy session helped her "a lot." *Id*. at 107.

Plaintiff has outbursts with her family members 2 or 3 times a week. The outbursts are "[m]ore verbal than physical." *Id*. at 116. She had similar problems during her job at Delphi, resulting in disciplinary proceedings. She noted, "they put me off over by myself .... [T]hey would ... try to get me by myself because nobody wanted me around and nobody could work with me." *Id*. at 117. This included her coworkers and supervisors.

At the time of the ALJ's hearing, Plaintiff had recently completed a sentence of probation stemming from a disorderly-conduct incident. The incident was a domestic dispute during which her son's girlfriend threatened to stab him, and Plaintiff intervened. When police arrived, Plaintiff argued with them. They told her to go inside the house but she kept arguing with them. She acknowledged during the ALJ's hearing that she threatened the police. She was eventually sentenced to 2 years probation. She testified that she has not been in trouble since.

Plaintiff further testified that she is in constant pain. She can hardly lift pans when trying to cook because her arms are stiff and sore. Her physician prescribes Etodolac and Vicodin, which sometimes helps and sometimes doesn't. The pain "never fully leaves [her] body." *Id*. at 108. She can walk about 1 block but further walking causes her chest pain.

She can stand for 10-15 minutes. Her right hand gets numb, on and off. Her "whole body is sore." *Id*. at 109.

Turning to the medical evidence, a detailed description of Plaintiff's medical records and the medical-source opinions is unnecessary. The undersigned has reviewed the entire administrative record. Administrative Law Judge Lombardo's decision and Plaintiff's Statement of Errors accurately summarize the relevant records with citations to specific evidence. The Commissioner's attorney, moreover, discusses the relevant facts in the argument section of the Memorandum in Opposition.

### III. The "Disability" Requirement and Judicial Review

The Social Security Administration provides Supplemental Security Income to indigent individuals, subject to several eligibility requirements. Chief among these requires an applicant to be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2] 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines:

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

4

"whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### IV.   Two Administrative Decisions

To determine if an applicant for Disability Insurance Benefits or Supplemental Security Income is under a benefits-qualifying disability, the Social Security Administration employs its 5-step sequential evaluation. *See* 20 C.F.R. §§404.1520(a)(4); 416.920(a)(4);[3] *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). When denying Plaintiff's applications for benefits, two different Administrative Law Judges (ALJs) – first, ALJ David A. Redmond; later ALJ Lombardo – conducted the Social Security Administration's 5-step sequential evaluation. Each ALJ concluded that Plaintiff was not under a benefits-qualifying disability.

During ALJ Redmond's sequential evaluation, he concluded that Plaintiff had the severe impairments of left carpal tunnel syndrome, major depressive disorder, and anxiety disorder. (Doc. #6, *PageID#* 151). ALJ Redmond also assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. §404.1545(a); *see also Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). ALJ Redmond found that Plaintiff could perform light work[4] with the following

---

[3] The remaining citations will identify the pertinent regulations for Disability Insurance Benefits with full knowledge of the corresponding regulations for Supplemental Security Income.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

6

restrictions:

> lifting no more than ten pounds; no more than frequent fine manipulation; simple tasks; minimal interpersonal contacts in the workplace; no production quotas.

(Doc. #6, *PageID#* 157). With these limitations in place, ALJ Redmond concluded that Plaintiff could not perform her past jobs. But, considering her age, education, and past work, she could perform a significant number of jobs that remain available to her. *Id*. ALJ Redmond thus found Plaintiff not under a disability.

More recently, in January 2013, ALJ Lombardo's sequential evaluation found Plaintiff with severe impairments of "left carpal tunnel syndrome, degenerative disc disease of the cervical spine, affective disorder with depression and anxiety features." *Id*. at 77. ALJ Lombardo – like ALJ Redmond – concluded that Plaintiff could perform a limited range of light work. The specific physical limitations ALJ Lombardo identified were "no more than frequent fingering/handling bilaterally, no lifting of more than ten pounds, no more than occasional overhead reaching bilaterally ..." *Id*. at 83. As to her mental work restrictions, ALJ Lombardo found that Plaintiff was limited to:

> essentially unskilled low-stress duties (no assembly-line production quotas or fast-pace), no more than occasional contact with the general public, co-workers, or supervisors.

*Id*. Given these limitations, ALJ Lombardo concluded that Plaintiff could not perform her past jobs, but – considering her age, education, and past work – could perform a significant number of jobs that remain available. She was, therefore, was not under a disability,

7

according to ALJ Lombardo.  *Id*.

V.	**Discussion**

Plaintiff contends that ALJ Lombardo erred in adopting ALJ Redmond's residual functional capacity based on her (ALJ Lombardo's) conclusion that Plaintiff's mental condition and her residual functional capacity had not really changed since the date of ALJ Redmond's decision.[5]

When assessing Plaintiff's mental residual functional capacity, ALJ Lombardo noted that her findings "are essentially consistent with the restrictions imposed..." by ALJ Redmond.  (Doc. #6, *PageID#* at 85).  ALJ Lombardo further observed:

> No new and material evidence has been presented to show that the claimant's mental condition has changed appreciably since the issuance of [ALJ Redmond's] decision.  Once again, these restrictions allow the claimant the maximum benefit of the doubt with regard to her allegations ....

*Id*.

ALJ Lombardo's legal criteria is correct.  "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).  Consistent with *Drummond*, the Commissioner's Acquiescence Ruling provides:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators

---

[5] The headings in Plaintiff's Statement of Errors assert that ALJ Lombardo "erred in finding that Plaintiff's back impairment had not worsened since the previous administrative law judge's decision." (Doc. #7, *PageID#* 806, 851) (capitalization omitted).  These headings appear to be misplaced because Plaintiff's arguments challenge ALJ Lombardo's decision concerning her mental impairments.

> must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98-4(6), 1998 WL 283902 (June 1, 1998).  The main issue for present consideration is whether substantial evidence supports the ALJ's findings concerning the lack of new and material evidence showing a deterioration in Plaintiff's mental work abilities and limits.

Plaintiff contends that the ALJ should not have relied on the opinions two non-examining state-agency reviewers, Drs. Finnerty and Rivera, who (like ALJ Lombardo) adopted ALJ Redmond's previous assessment of Plaintiff's residual functional capacity.

Psychologist Dr. Finnerty noted in February 2011 that he adopted ALJ Redmond's assessment "under 98-4 and *Drummond* Ruling."  (Doc. #6, *PageID#* 176).  Psychologist Dr. Rivera noted in July 2011 that he adopted ALJ Redmond's assessment "under 98-4 and *Drummond* Ruling."  *Id*. at 203.  Plaintiff argues that ALJ Lombardo should not have deferred to these non-examiners because they "reviewed only six medical records and only one mental health record."  (Doc. #7, *PageID#* 817).  Plaintiff points out that after Drs. Finnerty and Rivera reviewed the record, nine exhibits were added, including all her mental-health-treatment notes and the opinions of her treating mental health specialists.  And, Plaintiff emphasizes that the ALJ did not even mention the opinion evidence provided by her treating counselor, Mr. Stanchina.

Plaintiff's arguments lack merit.  The ALJ reasonably relied on the opinions of examining psychologist Dr. Flexman and the opinions provided by record-reviewing

9

psychologists Drs. Rivera and Finnerty, rather than fully crediting the opinions provided by Mr. Stanchina or Plaintiff's treating physician, Dr. Nenonene.

Social security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists. *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing, in part, 20 C.F.R. §§ 404.1527(c)(1) and (2) (eff. April 1, 2012)).[6] To effect this hierarchy, the Regulations adopt the treating physician rule. *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242; *cf. Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("in fact the technical name for the 'treating physician' rule is the 'treating source' rule"). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable

---

[6] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards. *See Gentry v. Comm'r of Social Sec.*, 741 F.3d 708, 723 (6th Cir. 2013). The re-lettered version applies to decisions, like ALJ Lombardo's decision, issued on or after April 1, 2012.

clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry v. Comm'r of Social Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

As to non-treating medical sources, the regulations require ALJs to weigh their opinions "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §404.1527(c)).

ALJ Lombardo found that Plaintiff was limited "to performing essentially unskilled low-stress duties (no assembly-line production quotas or fast pace) with no more than occasional contact with the general public, coworkers, or supervisors." *Id*. at 84-85. The ALJ reasoned that these "non-exertional limitations are essentially consistent with the restrictions imposed in the prior decision of July 27, 2009." *Id*. at 85. The ALJ also relied on the opinions provided by Drs. Finnerty, Rivera, and Flexman. *Id*. at 80-82, 84.

Psychologist Dr. Finnerty reviewed the record on February 23, 2011. He determined

11

that Plaintiff had mild limitations in her activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation . Doc. #6, *PageID#* 173-74). Dr. Finnerty concluded that because there was no significant changes in Plaintiff's mental health, ALJ Redmond's previous assessment of Plaintiff's residual functional capacity should be "adopted under AR 98-4 Drummond Ruling." *Id*. at 176. In July 2011, psychologist Dr. Rivera reached the same conclusions about Plaintiff's work abilities and limits in these areas. *Id*. at 200-01.

Psychologist Dr. Flexman examined Plaintiff at the request of the state agency on February 1, 2011. *Id*. at 632-37. He assessed Plaintiff's mental-work abilities as follows: (1) Her ability to understand and remember and carry out short, simple instructions was not impaired; (2) her ability to make judgments for simple work-related decisions was mildly impaired; (3) her ability to sustain attention was mildly impaired; (4) her ability to interact appropriately with the public was mildly impaired; (5) her ability to respond appropriately to work pressures in a normal work setting was mildly impaired; and her ability to respond to changes in the work environment was moderately impaired. (Doc. #6, *PageID#*s 636-37). Dr. Flexman supported each of these opinions with explanations based, in large part, on the results of his examination and testing of Plaintiff. *See id*.

Dr. Flexman reported that during the examination, Plaintiff's speech was logical and

12

coherent. Her affect was "embellished and lability was not present";[7] her attitude was within normal limits; she reported an "explosive and violent temper"; "[f]eelings of helplessness, hopelessness, and worthlessness were not present." (Doc. #6, *PageID#* 634) (footnote added). There were no signs of anxiety; eye contact was fair at 60%; speech was within normal limits. She denied fears, panic attacks, or phobias. *Id*.

As to Plaintiff's mental status, Dr. Flexman observed that her facial expressions were within normal limits, her posture was relaxed, her general body movements were within normal limits, and her energy level was within normal limits. (Doc. #6, *PageID#* 634). Her mental content was likewise unremarkable. Dr Flexman reported that Plaintiff's thought processes were within normal limits, ideas of reference were not noted; persecutory ideas were not noted; she denied post-traumatic memories; obsessive/compulsive tendencies were not noted; and delusional thinking was absent. *Id*. at 635. Dr. Flexman reported that Plaintiff "is able to take care of all activities of daily living on her own." *Id*. at 633. He explained:

> When the claimant needs to go someplace she gets a ride or drives. She prepares food throughout the day. She does the dishes, laundry, vacuuming, sweeping, cleaning and general straightening up around the house. Outside chores are done by her son. She goes to the store three times per month. Activities include garage sales, cards, sports activities, flea markets, computers, grandchildren's activities and thrift stores. She does belong to a church. She enjoys going to the library, out to eat and on dates. She enjoys puzzles, music and the computer for hobbies. She watches TV and

---

[7] In psychiatry, lability "is characterized by rapidly shifting or changing emotions...; emotionally unstable." http://medical-dictionary.thefreedictionary.com (citing *Mosby's Medical Dictionary*, 8th edition (2009)).

> DVDs.  She goes places with, visits and talks with her friends at church.  She
> visits and talks with her children, siblings, relatives, grandchildren and
> parents.  She does baby-sit her own grandchildren.  She talks on the phone
> with friends and family.  She reads magazines and the Bible.  She handles her
> own finances and does volunteer at church playing music.

*Id*. at 633-34.  Dr. Flexman diagnosed Plaintiff with dysthymia and intermittent explosive disorder.

ALJ Lombardo supported her assessment of Plaintiff's mental-work limitations by carefully detailing the particular results of Dr. Flexman's examination and opinions.  In each functional area, the ALJ discussed and relied on the pertinent findings and opinions by Dr. Flexman.  The ALJ also placed "great weight" on the opinions of reviewing psychologists Drs. Finnerty and Rivera, and the ALJ concluded that no new and material evidence was presented to show that ALJ Redmond's assessment should be changed.  This was not error because the opinions Drs. Finnerty and Rivera, and their agreement with ALJ Redmond's previous findings, were essentially consistent with Dr. Flexman's opinions.  Substantial evidence therefore supported the ALJ's findings concerning Plaintiff's mental-work limitations.  While it is true that some additional evidence regarding Plaintiff's mental-health treatment was submitted into the record after Dr. Finnerty's and Dr. Rivera's assessment, it was not error for the ALJ to rely on these psychologists' opinions because there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record.  The opinions need only be 'supported by evidence in the case record.'"  *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x

14

997, 1002 (6th Cir. 2011) (quoting Social Security Ruling 96-6p, 1996 WL 374180, at *2-*3 (1996)).  Because the opinions provided by Drs. Finnerty and Rivera were consistent with Dr. Flexman's opinions, their opinions were "supported by evidence in the case record."  *Id*. (quoting SSR 96-6p, 1996 WL 374180, at *3); *cf. McGrew v. Comm'r of Soc. Sec*., 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition.").  And, the ALJ reviewed and considered the opinions provided by Plaintiff's mental-health counselor Mr. Stanchina.  (Doc. #6, *PageID#* 79).  Plaintiff's contrary assertion lacks merit.

Mr. Stanchina's answers to a mental status questionnaire are long on opinions but short on explanations.[8]  For example, he noted that Plaintiff had "short attention span," "poor concentration," and limited ability to interact socially, but he provided no information or explanation in support of these opinions.  *Id*. at 640.  Additionally, some of Mr. Stanchina's observations appear to be inconsistent.  For instance, he described Plaintiff as fully oriented with no thinking disorders and having average intelligence, yet at the same

---

[8] Because Mr. Stanchina was a therapist and not a doctor, he is not considered an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). Accordingly, an ALJ is not permitted to assign "controlling" weight to this form. See Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

time he noted limited cognitive functioning.  (Doc. #6, *PageID*# 639).  He reported that her insight and judgment were fair yet also recognized that she had "periods of disorderly behavior" that led to her arrest.  *Id*.  The ALJ could reasonably disregard these internally inconsistent observations.

      The ALJ also reasonably discounted the opinions of Plaintiff's primary care physician, Dr. Nenonen, and provided good reasons for doing so.  In April 2010, Dr. Nenonene completed a basic medical form stating that Plaintiff had no significant physical limitations when he examined her but that based upon her depressed mood, anxiety, and increased agitation, she would be "unemployable" for 12 months or more.  (Doc. #6, *PageID*#s 77-78, 664-65).  The ALJ explained that Dr. Nenonene presented specific findings that contradict his own opinion that Plaintiff was unemployable for 12 months or more.  *Id*. at 78.  Additionally, Dr. Nenonene failed to refer to diagnostic evidence and failed to provide any meaningful explanation of his opinion that Plaintiff was unemployable for 12 months or more.  *See id*. at 664-65.  His opinion was therefore due little, if any, significant weight, *see* 20 C.F.R. §404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion...."), particularly when the opinions were inconsistent with the well-explained opinions of examining mental-health specialist, Dr. Flexman.  *See id*., §404.1572(c)(5) (We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty that to the opinion of a source who is not a specialist.").

Accordingly, for all of the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability decision dated January 23, 2013 be affirmed; and

2. The case be terminated on the Court's docket.

June 2, 2015

                                                      s/Sharon L. Ovington
                                                      Sharon L. Ovington
                                      Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).